## SILVER v. ELIAS.

(Supreme Court, Appellate Term. February 25, 1901.)

1. BILLS AND NOTES—EVIDENCE—FORGERY.

Witnesses for plaintiff, in an action on a note, testified that they had seen defendant execute and deliver it. The payee stated that he had sold his business to defendant for $500, receiving $300, and executing a bill of sale therefor, in which the consideration was $1, and that six months thereafter he met defendant on the street, which meeting culminated in the delivery of the note in suit. Plaintiff's testimony was contradicted by his own witnesses in essential details, and by defendant, who denied execution of note. The signatures to the note and to the verification signed by defendant were palpably different. *Held* not to support a verdict for plaintiff.

2. SAME—PROCURING WRITING EXPERT—ADJOURNMENT.

The trial court's refusal to allow an adjournment after other testimony had been given, so that defendant might procure the testimony of a writing expert, was not error, being within the province of its discretion.

Appeal from municipal court, borough of Manhattan, Third district.

Action by Marks Silver against Josepf Elias. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before ANDREWS, P. J., and O'GORMAN and BLANCHARD, JJ.

Shafer & Levin, for appellant.

H. W. Schmitt, for respondent.

ANDREWS, P. J. This is an appeal by the defendant from a judgment rendered by the municipal court, Third district, in favor of the plaintiff, in the sum of $200, with costs. The action is brought to recover said sum of $200 on a note alleged to be made by the defendant. The answer interposed was a general denial, the defendant claiming that he never signed the note in question. Upon the trial one Kaplan testified that prior to March 6, 1900, he sold the defendant a store at 53 Bayard street, and was to receive therefor $500; that defendant paid him $300 in cash, and promised to pay the balance in four or five months; that about seven months thereafter he met the defendant on the street; he said he could not pay him in cash, but that he would give him a paper for a few months; that soon after he received the note by the hand of one Cohen, and that in April he gave the note to the plaintiff, who is his brother-in-law, to have it discounted; and that the note was not paid when it became due, in July. One Brinkerhoff testified, on behalf of the plaintiff, that in March, 1900, he was employed by the manager of the defendant; that he was present when the note was drawn; that it was in the handwriting of the defendant; that he saw the defendant draw the note, sign, and indorse it, and that the defendant then handed the note to one Cohen, who was present. Silver, the plaintiff, testified that he discounted the note in April, 1900; that he received it from Kaplan, who was his brother-in-law; that the note was never paid. The defendant, Elias, testified that he never wrote anything like the note; that it was not signed by him; that the note was not made by him; that he never made a note to Kaplan for $200; that the indorsement on the back

of it was not his signature; that the note in question was not pre-
sented to him; that he did not know that Kaplan or Silver claimed to
have a note signed by him; that the first he knew of it was when he
was served with the papers in this action; that he paid Kaplan for
the business $300; that the consideration for the business was $250,
and that he paid $50 more for expenses to the lawyer who drew up the
bill of sale,.a Mr. Bernstein; that he never signed the note or showed
it to Brinkerhoff; that he never wrote the body of the note, and did
not know who wrote it; that he never saw the note until it was pro-
duced in court; that he never gave a paper to Cohen to give to Kap-
lan.   One Cohen testified for the defense that Kaplan told him the
bargain was $250, but there were expenses which made it $300; that
Kaplan did not sell the business to Elias for $500; that he did not
give any note to Kaplan at any time or any place; that he did not
take the note in suit and give it to Kaplan.   One Shafer and Mrs.
Kaplan, the wife of the payee, testified that Cohen brought the note
to the presence of the Kaplans, and delivered it to the payee.

It is obvious that there is gross perjury in this case on one side or
the other, and, after a careful examination of the testimony, I am
of the opinion that it is on the side of the plaintiff.   Kaplan swore
that he sold the business for $500, and that he received $300, and exe-
cuted a bill of sale.   He testified that the consideration named in the
bill of sale was $1, and that the reason he did not make the consid-
eration $500 was that he did not want to put in any price.   This was
untrue, for the bill of sale was put in evidence, and showed that the
consideration named therein was $250.   Moreover, Kaplan's story
that he sold the place for $500, and that he received $300 in cash, and
that the balance was to be paid in four or five months, and that he
met the defendant on the street, who then promised to give him a
paper, and thereafter gave the note, is, in the highest degree, improb-
able.

Moreover, the return contains the verified answer of the defendant,
and what purports to be his genuine signature is subscribed to the
verification.   The alleged signatures of the defendant, both at the
end of the note and indorsed upon its back, present a most extraor-
dinary appearance, greatly differing from the original signature sub-
scribed to the verification of the defendant's answer.   Brinkerhoff
was questioned about these signatures.   He had been asked whether
the note produced was the one which he saw the defendant make, and,
after some hesitation, said that it was.   He also said that the note
that the defendant signed had peculiar features.   He was asked what
they were, and answered: "The trembling of the writing accounted
for by its being written upon a rough counter; the old form of note
not in existence to-day.   I know the signature is not written as
smoothly as he ordinarily wrote.   It was written on a rough counter.
The signature is poorer.   It may have been rougher at that point."
He also testified that the note was written upon a rough counter, and
that the whole note was drawn by Elias.   It seems to me that a com-
parison with the genuine signature of the defendant, subscribed with
the verification of his answer, with his alleged signatures upon the
note, especially when such comparison is made with a magnifying

glass, should convince any one that what purport to be the signatures of the defendant upon the note are plainly nothing but wretched limitations of Elias' signature, and are palpable forgeries, and that the body of the note is not in the defendant's handwriting.

Upon the trial, after other testimony had been given, defendant's attorney asked for an adjournment in order that he might procure the attendance of an expert in writing. This request was denied, and the denial was not error, because it was entirely discretionary with the justice as to whether he would allow an adjournment for that purpose at that time.

I am convinced, however, that the alleged signatures of the defendant on the note are forgeries; that the judgment is against the weight of evidence; and that a new trial should be granted, with costs to the appellant to abide the event. All concur.

